UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MARTINEZ GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>S. PIDO, et al.,<br><br>    Defendants. | Case No.: 1:11–cv– 0972–LJO–JLT (PC)<br><br>FINDINGS AND RECOMMENDATIONS OF DISMISSAL WITHOUT LEAVE TO AMEND<br><br>(Doc. 32) |

Plaintiff Joseph Martinez Garcia ("Plaintiff") is a state prisoner proceeding *pro se* in a civil rights action pursuant to 42 U.S.C. § 1983. On July 10, 2013, Plaintiff filed his fourth amended complaint, which the Court presently screens pursuant to 28 U.S.C. § 1915A. (Doc. 32). Having reviewed the pleadings, and for the reasons set forth below, the Court recommends that this matter be **DISMISSED without leave to amend**.

**I.     SCREENING REQUIREMENT**

Because Plaintiff seeks redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify cognizable claims. 28 U.S.C. § 1915A(a)-(b). The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. §

1

1915(e)(2)(B)(i)-(iii).

## II.  PLEADING STANDARDS

### A.  Fed. R. Civ. P. 8(a)

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (*quoting* Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id.  Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."  Fed. R. Civ. P. 8(a).  Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1).  While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (internal quotation marks and citation omitted).  In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 679.

### B.  42 U.S.C. § 1983

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See* Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a

plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

**III.    COMPLAINT**

Plaintiff claims, that while housed at Pleasant Valley State Prison in Coalinga, California, he suffered constitutional deprivations related to his medical care. (Doc. 32 at 1-3). Plaintiff names Dr. Pido, Dr. Duenas, and Warden Yates from PVSP as defendants to this matter. Id. at 2-3. He also names Dr. Horan from Delano Regional Center in Delano, California, as a defendant. Id. at 3. Plaintiff's complaint chronicles his medical issues from 2009 until 2011 as follows:

On January 22, 2009, medical personnel diagnosed Plaintiff with Hepatitis C and an enlarged prostate. (Doc. 32 at 8). PVSP doctors performed an abdominal ultrasound on that same day. Id at 13. Subsequently, on July 2, 2009, PVSP doctors performed a bladder ultrasound and recommended a cystoscopy. Id. at 13.

In August of 2009, Plaintiff suffered flu-like symptoms. (Doc. 32 at 3). Nurse Ryan advised Plaintiff to drink water and follow-up with a doctor in two weeks if his symptoms persisted. Id. Two weeks later, Dr. Pido examined Plaintiff and ordered a blood test. Id.

On December 10, 2009, Dr. Pido informed Plaintiff that he tested positive for Coccidioidomycosis ("Valley Fever"). Id. at 3. Dr. Pido also inquired why another doctor had prescribed morphine for Plaintiff. Id. Plaintiff answered that he was a "chronic patient," who suffered from a spinal "injury, nerve damage[,] and a degenerative disc disease." Id. at 3. Dr. Pido dismissed Plaintiff without prescribing any medication for Valley Fever, because "it might go away on [its] own." Id. at 4. Shortly thereafter, Plaintiff experienced "joint pain, fever, night sweats, headaches and shortness of breath." Id. at 4. Dr. Manashre prescribed medication for his Valley Fever on January 19, 2010. Id. at 4.

On July 22, 2010, Dr. Coleman conducted a follow-up appointment with Plaintiff in regard to his Valley Fever. Id. at 5. At that time, Dr. Coleman asked Plaintiff whether he had meningitis. Id. Plaintiff was not aware that he had meningitis. Id.

On December 22, 2010, Dr. Duenas, screened and evaluated Plaintiff's medical grievance. Id. at 7. Plaintiff informed Dr. Duenas that he was suffering from "severe pain from a back spinal injury, nerve damage, degenerative disc disease, [] an [e]nlarged prostate [sic], [b]ladder pain, [k]idney pain, and [] Valley Fever." Id. at 7. He wrote two letters to Dr. Duenas and requested further testing for his symptoms. Id. Also on December 22, 2010, an infectious disease doctor determined that Plaintiff did not suffer from meningitis. Id. According to Plaintiff, medical providers should have conducted a spinal tap to "rule out the Lethal Virus" or meningitis with which Plaintiff believes he was infected. Id. at 8.

On April 19, 2011, prison personnel transported Plaintiff to Delano Regional Center where Plaintiff underwent a cystoscopy. Id. at 13. Dr. Horan discovered that Plaintiff's prostate was the size of a "little golf ball" and that Plaintiff's "bladder was backed-up (sic) with a mass of waste." Id. at 13. Dr. Horan explained that he needed to perform another surgery to remove the excess fluid. Id.

On June 15, 2011, Dr. Duenas and PVSP's Case Management Committee again interviewed Plaintiff concerning his medical grievances. Id. at 7. During the meeting, the committee expressed their belief that Plaintiff was attempting to obtain a higher dose of narcotics and commented that Plaintiff "has a drug history for drug possession, sales, and false prescriptions on the streets." Id. at 7.

On November 22, 2011, Dr. Horan performed bladder surgery on Plaintiff. (Doc. 32 at 13). Dr. Horan also removed a benign tumor and treated Plaintiff's enlarged prostate. Id. at 14. Surgical complications caused significant blood loss, a rapid decrease in blood pressure, and damage to Plaintiff's reproductive organs. Id.

## IV.   LEGAL ANALYSIS AND DISCUSSION

### A.  Eleventh Amendment

Plaintiff brings suit against Dr. Duenas and Warden Yates in both their individual and official capacities. (Doc. 32 at 8-9). To the extent that Plaintiff sues these Defendants in their official capacity, and as previously advised, naming an employee in his or her official capacity is "in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The Eleventh Amendment provides immunity to any State in any type of lawsuit "... in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Thus, the Court recommends dismissal of Plaintiff's claims brought against Dr. Duenas and Warden Yates in their official capacities.

### B.  Eighth Amendment – Inadequate Medical Care

Plaintiff again indicates that Defendants failed to provide him with adequate medical care. (Doc. 32).  To establish a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In other words, the plaintiff must show the existence of (1) a serious medical need and (2) a deliberately indifferent response by the defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

A medical need is serious "if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Indications that a person has a serious need for medical treatment include: the existence of an injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citations omitted).

A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need, thereby inflicting harm on the plaintiff.  *See* Farmer v. Brennan, 511 U.S. 825, 837-42 (1994); Jett, 439 F.3d at 1096.  Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment.  See Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  Nevertheless, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  Furthermore, Ninth Circuit has clearly established that *"[a]s a*

*matter of law, differences of opinion between prisoner and prison doctors fails to show deliberate indifference to serious medical needs.*" Quiroga v. Green, Case Number 1:11-CV-00989-GBC, 2012 WL 3704784 * 4 (E.D. Cal. Aug. 24, 2012) (*citing* Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996))(emphasis in original).

Here, Plaintiff indicates that he suffers or has suffered from "severe pain from a back spinal injury, nerve damage, degenerative disc disease, [] an [e]nlarged prostate [sic], [b]ladder pain, [k]idney pain, and [] Valley Fever." (Doc. 32 at 7). Allegations of chronic and severe pain have been recognized as serious medical conditions necessitating medical treatment. *See* Mendez v. Win, CIV S-08-2727 WBS DA, 2011 WL 219526, at *11 (E.D. Cal. Jan. 19, 2011) *report and recommendation adopted*, CIV S-08-2727 WBS, 2011 WL 778061 (E.D. Cal. Feb. 25, 2011). Thus, at this early juncture, Plaintiff demonstrates that he suffered from a serious medical need.

### 1. Dr. Pido

Plaintiff complains that Dr. Pido questioned Plaintiff's morphine usage and failed to provide him Valley Fever medication. (Doc. 32 at 3-4). The determination that a patient no longer requires a particular type of medication or does not require a certain medication expresses nothing more than a mere difference of medical opinion between a patient and his healthcare provider. *See* Jackson, 90 F.3d 330. With regard to the morphine usage, there is no indication that Dr. Pido terminated any medication. *See* Id. at 4. Similarly, Dr. Pido noted that Valley Fever often resolved itself without medication in other inmates. Id. Thus, she did not prescribe any Valley Fever medication in December of 2009 because "[the Valley Fever] might go away on its (sic) own." Id.

While Plaintiff complains that he "got very sick soon after" it appears that Plaintiff's symptoms were dormant at the time Dr. Pido examined him. Id. Furthermore, Plaintiff admits that Dr. Manashre provided Plaintiff treatment for his Valley Fever symptoms on January 19, 2010. Thus, the Court finds that there is no support that the failure to provide immediate treatment for the Valley Fever caused Plaintiff harm. Therefore, the Court recommends that Plaintiff's complaint against Dr. Pido be **DISMISSED.**

### 2. Dr. Duenas

Plaintiff's complaint against Dr. Duenas also indicates nothing more than a difference of

opinion between a medical professional and a patient. On December 22, 2010, and June 15, 2011, Dr. Duenas and the Case Management Committee at PVSP met with Plaintiff concerning his request for further testing and medication related to his enlarged prostate, kidney and bladder pain and Valley Fever. (Doc. 32 at 7). A review of the complaint indicates that Plaintiff received medical treatment *on that same date* at which time he was informed that by an infectious disease doctor that he did not suffer from meningitis. (Doc. 32 at 8). Yet, Plaintiff argues that medical providers failed to do a spinal tap to "rule out the Lethal Virus" with which Plaintiff believes he was infected. Id. at 8. Plaintiff is not entitled to relief merely because he did not receive the desired medical testing which he sought as a mere precaution.

In any event, Dr. Duenas seemingly met with Plaintiff for the sole purpose of reviewing his medical grievance and not for the purpose of providing medical care. To the extent that Plaintiff alleges that Dr. Duenas ignored his medical grievances, he is advised that it is well-established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Therefore, when a prison official denies, screens-out, or ignores an inmate's grievance, the prison official does not deprive the inmate of any constitutional right. See, e.g., Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegation that prison officials denied or ignored his inmate appeals failed to state a cognizable claim); Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788, at *6-7 (E.D. Cal. Dec. 17, 2009) (plaintiff's allegation that prison officials failed to timely process his inmate appeals failed to state a cognizable claim); Towner v. Knowles, No. CIV S-08-2833 LKK EFB P, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegation that prison officials screened-out his inmate grievances without any basis failed to show a deprivation of federal rights). Thus, Plaintiff fails to state a claim against Dr. Duenas. Therefore, the Court recommends that the matter against Dr. Duenas be **DISMISSED.**

    **3. Warden Yates**

Plaintiff alleges that Warden Yates was deliberately indifferent to Plaintiff's medical condition when he failed to provide "competent" medical staff and failed to protect Plaintiff from the threat of

Valley Fever. (Doc. 32 at 9). Plaintiff provides no factual basis for his conclusion that Warden Yates was aware of the risk of Valley Fever or that he knew Plaintiff contracted Valley Fever. Thus, the Court cannot find that Warden Yates was knowingly indifferent towards Plaintiff's condition. Farmer, 511 U.S. 825.

In addition, Plaintiff's argument that Warden Yates failed to provide "competent" medical staff fails to provide sufficient factual support that Warden Yates has any authority to hire the medical staff. Moreover, as pleaded, his claim seems more akin to a complaint of failure to supervise rather than an Eighth Amendment claim of inadequate medical care. However, liability may not be imposed on supervisory personnel under section 1983 on the theory of *respondeat superior,* as each defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); *accord* Starr v. Baca, No. 09–55233, 2011 WL 477094 *4–5 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir.2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir.2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir.1997). Notably, Plaintiff provides no factual support to demonstrate that PVSP medical staff were incompetent[1] or that Warden Yates himself committed any violation of the Eighth Amendment. Therefore, the Court recommends Plaintiff's claim against Warden Yates be **DISMISSED**.

### 4. Dr. Horan

The Court may consider Dr. Horan's liability under 42 U.S.C. § 1983 even though he is a private physician who has contracted with the CDCR. *See* West v. Atkins, 487 U.S. 42, 55-56, 108 S. Ct. 2250, 2259, 101 L. Ed. 2d 40 (1988). Courts analyze the role of the contracted physician with the inmate to determine whether a private physician is a state actor for purposes of liability under 42 U.S.C. § 1983. West, 487 at 55-56 ("It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State.") Where a private physician voluntarily contracts with the state to render medical services for

---

[1] The mere fact Plaintiff disagreed with the course of treatment he was provided is not sufficient to demonstrate the medical staff was incompetent.

an inmate, he assumes the affirmative obligation of the state to provide adequate medical care. Id. Seemingly, Dr. Horan provided medical services to Plaintiff in November 2011, although there are few facts alleged to demonstrate the precise nature of his arrangement with the CDCR. Therefore, the Court presumes, without deciding, Dr. Horan was a state actor at the time he treated Plaintiff.

On the other hand, Plaintiff does not provide any factual support to demonstrate that Dr. Horan was deliberately indifferent to Plaintiff's serious medical condition. On the contrary, Dr. Horan noted that Plaintiff's benign tumor and prostate had significantly grown in size during the November 22, 2011 surgery. (Doc. 32 at 14). Rather than ignoring Plaintiff's presumably dangerous medical condition, Dr. Horan treated the prostate and removed the tumor. Id. While it is unfortunate that Dr. Horan's treatment resulted in Plaintiff's loss of the "enjoyments of life" and Plaintiff's ability to procreate, the facts demonstrate a California claim for medical negligence[2] at best. Thus, Plaintiff fails to demonstrate that Dr. Horan acted deliberately indifferent to Plaintiff in violation of his Eighth Amendment right to adequate medical care. Therefore, the Court recommends that Plaintiff's complaint against Dr. Horan be **DISMISSED**.

V. **DISMISSAL WITHOUT LEAVE TO AMEND**

Previously, the Court advised Plaintiff of the legal standards required to state a cognizable Eighth Amendment claim of inadequate medical care. (Doc. 28). Plaintiff again fails to state a cognizable claim. Furthermore, the facts set forth in the fourth amended complaint do not reasonably indicate that Plaintiff could state a cognizable claim were he provided the opportunity to again amend his complaint. Thus, the Court finds that leave to amend would be futile.

**FINDINGS AND RECOMMENDATIONS**

Accordingly, for the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's fourth amended complaint (Doc. 32) be **DISMISSED without leave to amend.**

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Within fourteen days after being served with these findings and recommendations, Plaintiff may file written objections with

---

[2] As Plaintiff fails to state a claim pursuant to 42 U.S.C. § 1983 or any other federal statute, no grounds exist for the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367.

the Court.  Any document containing written objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 22, 2013**                     /s/ Jennifer L. Thurston
                                                                 UNITED STATES MAGISTRATE JUDGE